[Crim. No. 2962. In Bank.—April 22, 1927.]

## THE PEOPLE, etc., Respondent, v. HARRY K. WEITZEL, Appellant.

[1] CRIMINAL LAW—BRIBERY—SECTION 165, PENAL CODE—CONSTRUCTION.—Before the amendment of 1905 to section 165 of the Penal Code, any member of a common council who offered to receive a bribe was within the statute, and such amendment signifies an intention to change the pre-existing law; and a charge against such an officer under said amended section of "agreeing to receive" a bribe to influence his official action is not sustained by evidence of his offer to receive such bribe which offer was not consummated by an agreement with another person.

[2] STATUTORY CONSTRUCTION—AMENDMENT TO LAW.—Where changes have been introduced by amendment to a law, it is not to be assumed that they were without design; usually an intent to change the law is inferred.

---

(1) 9 C. J., p. 408, n. 80.    (2) 36 Cyc., p. 1165, n. 84.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. George H. Cabaniss, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Sample & Harden for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and Chester C. Kempley for Respondent.

LANGDON, J.—The defendant was convicted of bribery under the first and third counts of an indictment, based on section 165 of the Penal Code of the state of California. Upon appeal, the district court of appeal, second appellate district, division one thereof, reversed the judgment. A petition for hearing was filed in this court by the Attorney-General, which petition was granted.

---

2. See 23 Cal. Jur. 778; 25 R. C. L. 1050.

As stated in the opinion of the district court of appeal, the evidence sufficiently discloses that the defendant, on or about the twentieth day of June, 1923, was a duly elected, qualified and acting member of the common council of the city of San Diego, and that on that day he offered to one Ed Fletcher and Charles F. Stern to cast his official vote in said common council in favor of the purchase by the city of San Diego of Cuyamaca Water Company, in consideration of the payment to him of the sum of $100,000. The evidence, introduced under a separate count of the indictment, also is sufficient to prove that on the twenty-third day of June, 1923, while still a member of the common council, he offered to one Ed Fletcher, in consideration of the payment to him of the sum of $4,000, to cast his official vote as hereinafter stated, as a member of the said common council, in the matter of calling an election for the purpose of submitting to the electors of the city of San Diego the question of the ratification of the annexation to the city of San Diego of the territory formerly known as the city of East San Diego. The evidence in this case does not disclose anything as to the nature of the offer, excepting the fact that the defendant approached Ed Fletcher and Charles F. Stern and proposed that they pay him the sum of $100,000 for his vote in the matter charged in the first count of the indictment, and as to the separate count referred to herein, that he likewise approached Ed Fletcher and proposed to him that he would favor ratification of the annexation of the city of East San Diego to the city of San Diego by way of an election, rather than by resolution of the council, if Colonel Fletcher would pay to the defendant the sum of $4,000 for his services.

As stated by the district court of appeal, the only point at issue on the appeal is whether or not such proof establishes the crime of "agreeing to receive" a bribe.

The portion of section 165 of the Penal Code applicable here reads as follows: "Every person who gives or offers a bribe to any member of any common council . . . with intent to corruptly influence such member in his action on any matter or subject pending before, or which is afterward to be considered by, the body of which he is a member, and every member of any of the bodies mentioned in this section who receives or agrees to receive any bribe upon any

understanding that his official vote, opinion, judgment or action shall be influenced thereby, or shall be given in any particular manner or upon any particular side of any question or matter, upon which he may be required to act in his official capacity, is punishable. . . . ''

The indictments charge that defendant did wilfully, etc., "agree to receive" a bribe.

By an amendment to section 165 of the Penal Code passed by the legislature in 1905 the offense on the part of any person giving or offering a bribe to a member of the common council was not modified, but the latter half of the section, dealing with offenses on the part of members of the common councils, was changed so that instead of reading as formerly that every member of any such body "who receives or offers to receive any such bribe, is punishable," etc., the statute by such amendment was made to read: "Every member of any of the bodies mentioned in this section who receives or agrees to receive any bribe upon any understanding," etc.

It is argued by defendant that by the use of the phrase "every member who agrees," the legislature meant every member who entered into an agreement with another person —that there must have occurred a meeting of the minds of two persons.

[1] Before the amendment of 1905, any member of a common council who offered to receive a bribe was within the statute and the amendment of the language in the particular noted signifies an intention to change the pre-existing law. In *United States* v. *Bashaw*, 50 Fed. 749, 754, it was said: "The very fact that the prior act is amended demonstrates the intent to change the pre-existing law, and the presumption must be that it was intended to change the statute in all the particulars touching which we find a material change in the language of the act."

[2] "Where changes have been introduced by amendment, it is not to be assumed that they were without design; usually an intent to change the law is inferred." (*In re Segregation of School District No. 58,* 34 Idaho, 222 [200 Pac. 138].) In *Rieger* v. *Harrington*, 102 Or. 603 [203 Pac. 576, 580], it was said: "By amending that statute, the legislature demonstrated an intent to change the pre-existing law, and the presumption must be that it was

intended to change the meaning of the statute in all the particulars wherein there is a material change in the language of the amended act.'' To the same effect are the following authorities: *Springfield Co.* v. *Walton,* 95 Mo. App. 526 [69 S. W. 477]; *Duff* v. *Karr,* 91 Mo. App. 16; *Pierce* v. *County of Solano,* 62 Cal. App. 465, 469 [217 Pac. 545]; *Shearer* v. *Flannery,* 68 Cal. App. 91, 94 [228 Pac. 549].

The case of *People* v. *Coffey,* 161 Cal. 433 [39 L. R. A. (N. S.) 704, 119 Pac. 901], was one wherein the defendant was prosecuted under the same statute sought to be applied here. Upon appeal, the defendant raised the question of whether the person giving the bribe was an accomplice, whose testimony required corroboration under the then existing law. In passing upon that question, it became necessary for the court to determine what acts were required to constitute the offense of bribery under section 165 of the Penal Code, and the following language was used:

''The charge against this defendant, as we have seen, is under section 165 of the Penal Code. It is not for *asking* or *soliciting* a bribe. It is for *'agreeing'* to receive and *'receiving'* a bribe. The agreement necessarily carries with it the essential concept of a criminal and corrupt bargain. There can be no agreement without a meeting of minds, and a meeting of minds for this base bargain is declared to be a crime. There is nothing in the law to suggest even that in such a crime the two parties stand in any different position from that occupied by two who agree to fight a duel. In such an agreement the act of the person who contracts to pay the consideration is admittedly base, corrupt and criminal. Moreover, his conduct is essential to the very existence of the crime of agreeing. How then shall it be said that he is not, within the narrowest or the fullest meaning of the law, an accomplice of the man agreeing to take the bribe? He is an actual participant in the crime, as well as an aider, abettor, advisor and encourager in its commission for it is to be remembered that in the case at bar the crime itself is the *agreement.* An officer may solicit bribes, may ask for bribes, may advertise his willingness to accept bribes. Each one of these acts is a separate, distinct and recognized crime, but no one of them is the crime of *agreeing* to take a bribe, which *ex vi termini* re-

quires the guilty co-operation of another. (*United States v. Deitrich*, 126 Fed. 644.)"

In *United States* v. *Deitrich, supra,* the defendant was indicted for conspiracy under a federal statute. The conduct alleged as constituting conspiracy was an alleged agreement between the defendant, a congressman, and one Fisher, whereby the defendant agreed to receive a bribe from Fisher. The case came up on demurrer to the indictment upon the ground that the co-operation in agreeing to give and receive a bribe was merely the essential co-operation of more than one person required to constitute the crime of bribery by receiving or agreeing to receive a bribe, and that the mere plurality of participants necessary to constitute bribery could not convert the case into one of conspiracy. The court held that co-operation of two persons was essential to constitute an agreement to receive or the receiving of the bribe, using the following language: "Section 1781 of the Rev. St. makes it an offense against the United States (1) for a member of congress, or any officer or agent of the government, to directly or indirectly take, receive, or *agree to receive* any money, property, etc. . . . (2) for any person to directly or indirectly offer or agree to give, or give, or bestow any like consideration, etc. . . . (3) for any member of congress to . . . take, receive, or agree to receive, etc. . . . Concert and plurality of agents in such an agreement or transaction are, in a sense, indispensable elements of the substantive offenses defined in section 1781, or agreeing to receive a bribe and of agreeing to give one. A person can not agree with himself. The concurrent and several acts of two persons are necessary to the act of agreeing, receiving or giving. In this respect, agreeing to receive a bribe from another and agreeing to give one are unlike soliciting or offering a bribe, because the solicitation or offer may be the act of a single person and may occur without any concurrent act of another."

There is further authority to the same effect in the case of *People* v. *Squires,* 99 Cal. 327 [33 Pac. 1092], involving a conviction of the crime of receiving a bribe as a juror. The conviction was founded upon section 93 of the Penal Code, which enacts: "Every . . . juror . . . who *asks,* receives, or agrees to receive any bribe, upon any agreement or understanding that his vote, opinion, or decision shall

be influenced thereby, is punishable, etc. . . . '' The court said: ''Section 93 of the Penal Code denounces as liable to punishment those who *ask* for a bribe. To complete the offense it is not necessary that the party approached shall consent to give it. Unless he does so there could be no agreement or understanding. In such case it cannot be charged that such agreement or understanding exists, but only that the accused was ready to agree or enter into an understanding.''

The Attorney-General relies upon the case of *People* v. *Fitzpatrick*, 78 Cal. App. 37 [247 Pac. 601], and declares it is in conflict with the case of *People* v. *Coffey, supra,* and with the opinion of the district court of appeal in the instant case. In *People* v. *Fitzpatrick* the court announced that that decision was not inconsistent with *People* v. *Coffey,* nor with several other California cases presented upon the appeal, and we are in accord with this statement. In the Fitzpatrick case the court was passing upon an instruction proposed by defendant as applicable to the testimony of a feigned accomplice. The situation thus arising is recognized and the rule of the Fitzpatrick case is acknowledged in *People* v. *Coffey,* at page 448 of that decision, where it is said: ''In the charge against this defendant of 'agreeing to receive a bribe' and 'receiving a bribe,' each element, the agreeing and the receiving, necessarily contemplates the criminally corrupt co-operation of another (*eliminating from consideration, of course, the feigned accomplice*). To this proposition the authorities are so numerous and so uniform that one is rather embarrassed by the wealth than by the dearth of them.''

It is apparent from a reading of the two cases under discussion that they are not in conflict, but that, on the contrary, the Fitzpatrick case falls within the exception recognized in *People* v. *Coffey,* which is not true of the instant case.

Before concluding the discussion of the question, we feel impelled to say that we are impressed with the reasons of public policy urged by the Attorney-General in support of an affirmance of this judgment, and because of the importance of those considerations we granted the petition for a hearing in this court after decision by the district court of appeal. We regret, however, that we are without

power to read into the statute language which would prevent the solicitation of bribes by members of the common council with impunity, since the section of the Penal Code relating to this group of public officers fails to include the asking or soliciting of bribes by them.

The argument made by the petitioner herein should be convincing if addressed to the legislature, the department of the government with power to change the present unwholesome situation.

The judgment is reversed.

Preston, J., Curtis, J., Shenk, J., Waste, C. J., Richards, J., and Seawell, J., concurred.